UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **QUINTON RAMON WILLIAMSON,** <br> **TDCJ No. 02318918,** <br><br> Petitioner, <br><br> v. <br><br> **ERIC GUERRERO, Director,** <br> **Texas Department of Criminal Justice,** <br> **Correctional Institutions Division,** <br><br> Respondent. | §§§§§§§§§§§§§§ | **CIVIL NO. SA-24-CA-1026-JKP** |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Quinton Ramon Williamson's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (ECF No. 1). In the § 2254 petition, Petitioner challenges the constitutionality of his 2020 state court convictions for aggravated assault and assault/family violence, arguing that he was denied counsel at a critical stage and denied the right to the effective assistance of counsel at both the guilt/innocence and punishment stage of trial. Also before the Court are Respondent Eric Guerrero's Answer (ECF No. 10) and Petitioner's Brief in Support (ECF No. 12).

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**I. Background**

The facts of Petitioner's case were accurately summarized by the Fourth Court of Appeals of Texas on direct appeal:

On September 21, 2017, police responded to a 911 call reporting a disturbance and a female screaming for help at an apartment. According to Jeanette Lytle, [Petitioner]'s girlfriend at the time, the disturbance was an argument between her and [Petitioner] which escalated when [Petitioner] threw a gun case at her. Lytle testified that [Petitioner] shoved her into the wall, choked her, kicked her, and punched her. She testified that she was screaming and pleading for help, doing "[a]nything to get somebody's attention." The struggle left her on her knees. According to Lytle, [Petitioner] held a gun to her temple, repeatedly hit her with the gun, and threatened that he was going to end her life.

The altercation ended when a neighbor, Luis Duran, came to the residence after he heard cries for help. Duran explained that he found [Petitioner] holding a pistol in one hand and a child in the other. Officer Matthew Anz arrived at the apartment soon after but did not encounter [Petitioner] there. He observed a gun case, bullet casings on the living room floor, and a hole in the drywall. Officer Anz also observed visible injuries on Lytle and a white powdery substance on the shoulder of her shirt consistent with drywall from the hole in wall. [Petitioner] was arrested the next day at the same apartment.

On January 10, 2018, [Petitioner] was indicted on two counts of aggravated assault with a deadly weapon and one count of assault by choking or strangulation of a person with whom he has or has had a dating relationship. *See* Tex. Penal Code Ann. §§ 22.01, 22.02.

*Williamson v. State*, No. 04-20-00268-CR, 2021 WL 4976326 at *1 (Tex. App.—San Antonio, Oct. 27, 2021, pet. ref'd); (ECF No. 9-19). After hearing all the evidence, a Bexar County jury convicted Petitioner on all three counts. *State v. Williamson*, No. 2018CR0283 (175th Dist. Ct., Bexar Cnty., Tex. May 15, 2020); (ECF No. 9-9 at 70). After a separate punishment hearing, the trial court sentenced Petitioner to thirty years of imprisonment on Counts 1 and 2 and twenty years of imprisonment on Count 3, with the sentences to run concurrently. (ECF No. 9-2 at 1-6).

The Texas Fourth Court of Appeals affirmed his convictions on direct appeal. *Williamson*, 2021 WL 4976326; (ECF No. 9-19). The Texas Court of Criminal Appeals then refused his petition for discretionary review. *Id*.; *see also Williamson v. State*, No. 0155-22 (Tex. Crim. App. May 25, 2022); (ECF No. 9-29 at 2). Thereafter, Petitioner challenged the constitutionality of his convictions by filing an application for state habeas corpus relief. *Ex*

*parte Williamson*, No. 95,726-01 (Tex. Crim. App.); (ECF No. 9-30 at 5-44). Based, in part, on the findings of the state habeas trial court, the Texas Court of Criminal Appeals eventually denied the application without written order on June 26, 2024. (ECF No. 9-34).

A few months later, Petitioner initiated the instant proceedings by filing a petition for federal habeas corpus relief. (ECF No. 1). In the petition and corresponding memorandum in support (ECF No. 12), Petitioner raises the following allegations: (1) he was denied counsel at a critical stage, (2) his trial counsel rendered ineffective assistance by failing to convey his desire to negotiate a sentence agreement, and (3) trial counsel refused to withdraw despite showing up unprepared for trial. *Id*. at 7-10.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established

federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Merits Analysis

#### A. Right to Counsel (Claim 1)

Petitioner first alleges that he was denied the right to counsel at a critical stage of the proceedings. Specifically, Petitioner refers to a time after the guilt/innocence phase but before sentencing when the trial court allowed his retained attorney, Mr. Cornelius Cox, to withdraw as counsel due to a conflict of interest that had arisen. The Texas Court of Criminal Appeals rejected this same allegation during Petitioner's state habeas corpus proceedings. As discussed below, Petitioner fails to demonstrate the state court's rejection was either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts.

1.  Relevant Background

Following his conviction in October 2019 but prior to his sentencing proceeding in May 2020, Petitioner conveyed to Mr. Cox that, while in jail, he overheard information that he believed could be helpful to the State in an unrelated capital murder case. (ECF Nos. 1 at 7; 12 at 17; 9-30 at 83; 9-33 at 43). Petitioner wished to discuss a deal with the State wherein he would convey this information and testify on behalf of the State in the upcoming murder trial in exchange for a more lenient sentence in the instant case. *Id*. Mr. Cox contacted the District Attorney's Office, who appeared to show great interest in the information. (ECF Nos. 9-30 at 83; 9-33 at 7, 13-16). However, Mr. Cox represented both Petitioner and the original supplier of the information. *Id*. After discussing the matter with the District Attorney's Office and several district court judges, Mr. Cox determined that he had a conflict of interest that could only be resolved by withdrawing from both cases. *Id*.

Mr. Cox filed a motion to withdraw as counsel on January 9, 2020. (ECF No. 9-1 at 103). Two weeks later, the trial court granted Mr. Cox's motion and appointed attorney Miguel Najera to represent Petitioner at sentencing. *Id*. at 102, 105. Once Mr. Najera was appointed, Mr. Cox briefed him on Petitioner's case and made himself available if Mr. Najera needed to consult with him. (ECF Nos. 9-30 at 84; 9-33 at 15, 50). Mr. Najera then represented Petitioner during his sentencing hearing held May 15, 2020. (ECF No. 9-10).

2.  The *Cronic* Standard

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Normally, a defendant asserting a violation of his Sixth Amendment right to counsel is required to demonstrate the two-prong standard set forth in *Strickland v. Washington* that

counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. 668 (1984). In *United States v. Cronic*, 466 U.S. 648 (1984), however, the Supreme Court created a "a very limited exception to the application of *Strickland*'s two-part test." *Thomas v. Davis*, 968 F.3d 352, 355 (5th Cir. 2020) (quoting *Haynes v. Cain*, 298 F.3d 375, 380 (5th Cir. 2002)). Under *Cronic*, prejudice is presumed when "the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Russell v. Denmark*, 68 F.4th 252, 268-69 (5th Cir. 2023) (citing *United States v. Griffin*, 324 F.3d 330, 364 (5th Cir. 2003)).

There are three situations that involve circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified": (1) the "complete denial of counsel" during a critical stage of the proceedings, (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) where "surrounding circumstances ma[k]e it . . . unlikely that any lawyer could provide effective assistance." *Cronic*, 466 U.S. at 658-59; *Bell v. Cone*, 535 U.S. 685, 694-96 (2002). In this case, Petitioner argues that prejudice should be presumed under the first prong of *Cronic* because the trial court allowed his attorney to withdraw at a critical stage of the proceedings—after his conviction but before his sentencing proceeding. Thus, this Court must determine "whether [Petitioner] was effectively denied counsel, and if so, whether that denial occurred at a critical stage of the proceedings." *Russell*, 68 F.4th at 271 (citing *Cronic*, 466 U.S. at 659).

3.  Analysis

The record does not support Petitioner's assertion that he was left without counsel at a critical stage of the proceedings. Assuming that the time between the guilt/innocence phase and sentencing phase is a "critical stage," at no point during this time was Petitioner without counsel

6

in this case. The trial court appointed Mr. Najera to represent Petitioner on the same day it granted Mr. Cox's motion to withdraw, and Mr. Najera represented Petitioner at the sentencing hearing four months later.

Perhaps acknowledging this, Petitioner pivots by arguing (1) the trial court allowed Mr. Cox to withdraw "without determining the exact cause of the conflict of interest," and (2) Mr. Cox had been aware of the conflict *prior* to trial but failed to report it. (ECF No. 12 at 18-19). Even assuming the record supports these assertions—which it does not—neither argument establishes that Petitioner was "effectively denied counsel" when the trial court allowed Mr. Cox to withdraw. *Russell*, 68 F.4th at 271 (citing *Cronic*, 466 U.S. at 659). Petitioner was continuously represented by counsel both before and after the withdrawal. As such, Petitioner has not established a "complete denial of counsel" during a critical stage of the proceedings, much less that the state court's denial of this claim was an unreasonable application of *Cronic*. Relief is denied.

**B.     Trial Counsel's Performance (Claims 2 and 3)**

In his second and third claims for relief, Petitioner argues he was denied the right to effective assistance of counsel at trial by Mr. Cox. Specifically, Petitioner faults counsel for failing to: (1) convey his desire to negotiate a sentence agreement by offering evidence against a capital murder suspect to either the District Attorney's Office or his subsequent counsel, Mr. Najera, and (2) withdraw as counsel of record upon Petitioner's request after showing up unprepared for trial. Both of these allegations were raised during Petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals. As discussed below, Petitioner fails to demonstrate the state court's rejection of the allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

1.  The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland*. 466 U.S. at 668. Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. *Id*. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards

8

of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

    2.    <u>Failure to Convey Information</u>

Petitioner contends that his trial counsel, Mr. Cornelius Cox, failed to convey his desire to negotiate a sentencing agreement by offering evidence against a capital murder suspect in exchange for a lighter sentence. According to Petitioner, he informed Mr. Cox of this desire following his conviction in October 2019 and Mr. Cox agreed to facilitate such a deal with the District Attorney's Office, but never did. Petitioner also asserts that Mr. Cox "failed to inform the next appointed counsel [Mr. Najera] of the situation or give him any information regarding the case" after he withdrew in January 2020. (ECF No. 1 at 8).

Petitioner raised these allegations during his state habeas proceedings. In response, Mr. Cox submitted an affidavit wherein he addressed Petitioner's assertions of ineffective assistance:

> Prior to [Petitioner]'s sentencing, I was made aware that [Petitioner] had information that could lead to a more lenient sentence in his case.
>
> My recollection of these events are as followed [sic]: I contacted the District Attorney's Office and informed them that my client [Petitioner], may have evidence or information that could be helpful in an unrelated murder case. The District Attorney's Office appeared to show great interest in the information; however, both the supplier of the evidence and the receipt of the evidence were both my client.

9

>   After several discussions with the District Attorney's Office and seeking guidance of District Court Judges, it was determined that I had a conflict of interest between the two clients and the only way to resolve this conflict was to withdraw from both client's cases.
>
>   I subsequently withdrew from both client's cases, and when I learned the name of [Petitioner]'s new attorney, I made contact and I briefed him on [Petitioner]'s case and made myself available to Attorney Miguel Najera for any additional information or questions that he may have on [Petitioner]'s case.

(ECF No. 9-30 at 83-84). During an evidentiary hearing on the matter, Mr. Cox repeated his assertion that he informed both the District Attorney's Office and subsequent counsel about the information obtained by Petitioner. (ECF No. 9-33 at 7, 14).

The state habeas trial court found Mr. Cox's affidavit and testimony to be truthful and credible and concluded that his performance at Petitioner's trial did not fall below an objective standard of reasonableness under *Strickland*. *Id*. at 46-50. These findings and conclusions were ultimately adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application. (ECF No. 9-34). Petitioner has not furnished this Court with any evidence, much less with clear and convincing evidence, showing the state habeas court's findings on this subject were incorrect. *See Matamoras v. Stephens*, 783 F.3d 212, 216 (5th Cir. 2015) (recognizing the presumption of correctness afforded a state habeas court's factual findings applies absent clear and convincing evidence to the contrary); *Ward v. Stephens*, 777 F.3d 250, 268 (5th Cir. 2015) (same).

Regardless, even to the extent that Mr. Cox's performance in this case constituted deficient performance, this Court has independently reviewed the record of these proceedings and finds that any alleged errors were not prejudicial to his defense. Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[A] court assessing prejudice must consider the totality of the evidence before the

judge or jury." *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 696) (internal quotation marks omitted).

Petitioner has not established that the alleged error was prejudicial because, even if Mr. Cox failed to convey Petitioner's desire to negotiate a sentencing agreement to his subsequent counsel, Mr. Najera, there is no evidence that Petitioner was prevented from doing so himself. Indeed, whether it was conveyed by Mr. Cox or by Petitioner, the record indicates that Mr. Najera was aware of the information overheard by Petitioner and unsuccessfully attempted to negotiate an agreement with the State prior to sentencing. (ECF No. 9-10 at 146-47). During closing argument, Mr. Najera even attempted to gain sympathy from the trial court by pointing out that Petitioner tried to help the State but "through no fault of his own, it didn't work out." *Id*. Thus, Petitioner fails to establish that he was prejudiced by Mr. Cox's alleged error.

In sum, Petitioner failed to establish the state court's ruling on trial counsel's performance "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Consequently, viewing this allegation under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claim. Federal habeas corpus relief is therefore denied.

    3.    <u>Failure to Withdraw</u>

In his last allegation, Petitioner contends Mr. Cox was unprepared for the first day of trial. According to Petitioner, Mr. Cox was late for docket call, "clearly frazzled and unsure of the case," and asked him to "remind me again, what was your case about?" (ECF No. 1 at 10).

When subsequently asked by Petitioner to withdraw as his attorney, Mr. Cox allegedly refused, stating "It's too late for that." *Id*.

As with the previous IATC allegation, Petitioner raised this allegation during his state habeas proceedings. After hearing testimony from several witnesses at an evidentiary hearing on the matter, the state habeas trial court summarized Mr. Cox's testimony as follows:

    a.    Mr. Cox testified that he was prepared for trial when [Petitioner]'s case was tried.

    b.    Mr. Cox said that he did not have a specific recollection of the morning of [Petitioner]'s trial, but that he likely was late because he had multiple settings on different cases in different courts.

    c.    Mr. Cox had no recollection of asking [Petitioner] to "remind" him what his case was about.

    d.    Mr. Cox stated that he did not recall that [Petitioner] asked him to withdraw as his lawyer.

* * *

    f.    On cross examination, Mr. Cox clarified that saying before the court that he wasn't "ready" for trial is not the same as saying that he's not prepared to go to trial. Announcing "not ready" is more the equivalent of seeking a reset on a case based on having a time conflict with other cases in other courts.

(ECF No. 9-33 at 49-50).

Based on his affidavit and testimony, as well as the court's own review of the record, the state habeas trial court concluded that Mr. Cox's testimony was truthful and credible and that his performance did not fall below *Strickland*'s objective standard of reasonableness. *Id*. at 50. The Texas Court of Criminal Appeals implicitly adopted these findings and conclusions when it denied Petitioner's state habeas application without written order. (ECF No. 9-34). These determinations, including the trial court's credibility findings, are entitled to a presumption of

correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner again presents no clear and convincing evidence or persuasive argument to rebut the state courts' factual findings. Trial counsel's affidavit and testimony—adopted by the state habeas trial court and ultimately by the Texas Court of Criminal Appeals—contradicted Petitioner's allegations that counsel (1) was unprepared for trial, (2) needed to be reminded of the details of Petitioner's case, or (3) refused to withdraw despite Petitioner's request. Petitioner's conclusory arguments do not show that counsel's recollection was incorrect. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Nor do they demonstrate that state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Relief is therefore denied.

### IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a

different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V.  Conclusion and Order

Petitioner failed to establish that the state court's rejection of his *Cronic* or IATC claims on the merits during his state habeas corpus proceeding was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during his state trial, appellate, and habeas corpus proceedings. As a result, Petitioner's federal petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Quinton Ramon Williamson's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

**SIGNED this the 6th day of June, 2025.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**